IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DIANA L. DOUGAN,<br><br>                    Plaintiff,<br>v.<br><br>MARK S. MINTON,<br>                    Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 2:12-cv-00010-DN<br><br>District Judge David Nuffer |

Defendant Mark S. Minton's (Minton) filed a Motion to Dismiss.[1] After careful review of

the motions, memoranda, relevant legal authorities and other materials submitted by the parties,

the Motion to Dismiss is DENIED.

## Introduction

Plaintiff Diana Dougan and her husband Mr. Dougan are Utah residents and are the

parents of Elena L. Minton (Ms. Minton), wife of Defendant Mark S. Minton.[2] In 2007, Mr. and

Mrs. Dougan agreed to loan $500,000.00 to Ms. Minton and her husband Mark Minton for the

purchase of a home in Maryland where Mr. and Ms. Minton lived.[3] During negotiation of the

loan, Defendant and Ms. Minton discussed the terms of the loan numerous times with Plaintiff

and Mr. Dougan via telephone calls from Maryland to Utah.[4] After the terms of the agreement

were reached, Mr. and Mrs. Dougan mailed a promissory note (Note) to Mr. and Ms. Minton in

---

[1] Motion to Dismiss, docket no. 3, filed January 5, 2012.

[2] Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss (Memorandum in Opposition) at ii, docket no. 10, filed February 3, 2012.

[3] Memorandum in Opposition at ii–iii.

[4] *Id.* at ii.

Maryland, and in June of 2007, Mr. and Ms. Minton signed the Note and mailed it back to Utah.[5]

Mr. and Ms. Minton each made monthly payments on the Note by mailing checks to Utah.[6]

In 2009, the parties began renegotiating the Note.[7]  In conjunction with this renegotiation,

Mr. and Ms. Minton again placed several telephone calls to Utah, and also traveled to Utah to

discuss with Mr. and Mrs. Dougan the terms of a new promissory note (New Note).[8]  In August

of 2010, Mr. and Mrs. Dougan mailed the New Note to Mr. and Ms. Minton in Maryland,

whereupon Mr. and Ms. Minton signed it and mailed it back to Utah.[9]  As with the original Note,

Mr. and Ms. Minton agreed to send separate monthly payments by check to Mr. and Mrs.

Dougan in Utah.[10]  In September 2011, Mr. Minton sent an email to Sheryl Ramsay, Mr.

Dougan's office assistant in Utah, asking for Mr. Dougan's new office address in Utah.[11]  Ms.

Ramsay provided the Utah address to Mr. Minton, to which Mr. Minton sent a payment check

for the New Note.[12]

In August of 2011, Mr. and Mrs. Dougan sent a demand letter to Mr. and Ms. Minton

requesting that the New Note be paid pursuant to its terms.[13]  Mr. and Ms. Minton allegedly

failed to do so, at which point Mrs. Dougan filed the instant action against Mr. Minton.[14]  Mr.

Minton now moves this court to dismiss the matter for lack of personal jurisdiction.[15]

---

[5] *Id.* at iii.

[6] *Id.*

[7] *Id.*

[8] *Id.* at iii–iv.

[9] *Id.* at iv.

[10] *Id.*

[11] *Id.* at iv–v.

[12] *Id.* at v.

[13] *Id.*

[14] *Id.*

[15] Motion to Dismiss at 1.

**Discussion**

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing."[16] On a motion contesting jurisdiction, a court considers the allegations in the complaint to be true, and "all factual disputes are resolved in the plaintiff's favor."[17] Therefore, Mrs. Dougan's burden of establishing personal jurisdiction over Mr. Minton is satisfied by a prima facie showing. Mrs. Dougan's allegations will be taken as true and all factual disputes will be resolved in Mrs. Dougan's favor.

To obtain personal jurisdiction over a defendant in Utah, the defendant must have "minimum contacts" with Utah.[18] The plaintiff can show this by proving the defendant either (1) "has continuous and systematic general business contacts with [Utah]" (general jurisdiction), or (2) "has purposely directed his activities at residents of [Utah]" (specific jurisdiction).[19] Mrs. Dougan does not allege there is general jurisdiction over Mr. Minton in this case.[20] Therefore, Mrs. Dougan relies solely on the fact that there is specific jurisdiction in this case; that is, that Mr. Minton had sufficient "minimum contacts" with Utah.[21]

---

[16] *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) (citations omitted).

[17] *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (internal citations omitted).

[18] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[19] *See id.* at 1296 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984) and *Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

[20] Memorandum in Opposition at 1.

[21] *See Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944 (Utah 2008).

**Specific Jurisdiction**

"Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state."[22]  To establish jurisdiction in Utah, the plaintiff must show that "the defendant has 'purposely directed' his activities at residents of the forum."[23]  That is, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State."[24]  Specific jurisdiction cannot be based on "random, fortuitous, or attenuated contacts."[25]

In Utah, the specific jurisdiction inquiry involves a two-part test:[26] (1) whether the plaintiff's claims arise from one of the activities listed in the state long-arm statute; and (2) whether the defendant's contacts with the forum are sufficient to satisfy the due process clause of the Fourteenth Amendment.[27]

**1.  Mrs. Dougan's Claims Arise from One of the Activities Listed in Utah's Long-Arm Statute**

Under Utah's long-arm statute, transacting business in Utah or causing tortious injury in Utah give rise to specific jurisdiction in Utah.[28]  Because Mrs. Dougan has some factual support

---

[22] *Rambo*, 839 F.2d at 1416.

[23] *See Bell Helicopter*, 385 F.3d at 1296 (applying Utah law) (quoting *Burger King*, 471 U.S. at 472–73).

[24] *Bell Helicopter*, 385 F.3d at 1296 (citation omitted).

[25] *Id.* (quoting *Burger King*, 471 U.S. at 475).

[26] The Utah Supreme Court unequivocally rejected all other tests in *D.A. v. State (In re W.A.)*, 63 P.3d 607, 612 (Utah 2002):

> The proper test to be applied . . . involves two considerations. First, the court must assess whether Utah law confers personal jurisdiction over the nonresident defendant.  This means that a court may rely on any Utah statute affording it personal jurisdiction, not just Utah's long-arm statute. Second, assuming Utah law confers personal jurisdiction over the nonresident defendant, the court must assess whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment.

*Id.* (emphasis omitted); *see also Pohl*, 201 P.3d at 950 (applying two-part test).

[27] *See Pohl*, 201 P.3d at 950.

[28] *See* UTAH CODE ANN. § 78B-3-205 (2011).  The statute in its entirety provides:

4

for her allegation that Mr. Minton transacted business within Utah and caused injury within Utah,[29] she has satisfied the first part of the test.

### Transacting Business in Utah

Mrs. Dougan alleges that Mr. Minton "transacted business within this state" by negotiating the terms of the Note and procuring the Note.[30]  Mr. Minton, on the other hand, argues that Utah's long-arm statute doesn't apply to this case because Mrs. Dougan claims breach of contract, and "breach of contract" is not enumerated in the text of the long-arm statute. Thus, Mr. Minton claims that formation or breach of contract will not give rise to specific jurisdiction in Utah.[31]  This narrow reading of the statute is inaccurate.

The Utah Code broadly defines "transaction of business within this state" as the "activities of a nonresident person, his agents, or representatives in this state, which affect persons or businesses within the state."[32]  "These words are liberally and expansively interpreted such that a person may transact business within the state despite an absence of physical presence

> Notwithstanding Section 16-10a-1501, any person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>> (1) the transaction of any business within this state;
>> (2) contracting to supply services or goods in this state;
>> (3) the causing of any injury within this state whether tortious or by breach of warranty;
>> (4) the ownership, use, or possession of any real estate situated in this state;
>> (5) contracting to insure any person, property, or risk located within this state at the time of contracting;
>> (6) with respect to actions of divorce, separate maintenance, or child support, having resided, in the marital relationship, within this state notwithstanding subsequent departure from the state; or the commission in this state of the act giving rise to the claim, so long as that act is not a mere omission, failure to act, or occurrence over which the defendant had no control; or
>> (7) the commission of sexual intercourse within this state which gives rise to a paternity suit under Title 78B, Chapter 15, Utah Uniform Parentage Act, to determine paternity for the purpose of establishing responsibility for child support.

[29] *See* Memorandum in Opposition at 3.

[30] *Id.*

[31] Memorandum in Support of Motion to Dismiss (Memorandum in Support) at 5–6, docket no. 4, filed January 5, 2012.

[32] UTAH CODE ANN. § 78B-3-202(2); *see also Pohl*, 201 P.3d at 952 (explaining legislature's interpretation).

in Utah.'"[33]  "In fact, the entire Utah long-arm statute is intended to be interpreted broadly 'so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'"[34]

In *SII MegaDiamond*,[35] ASC, a New York company, entered into an agreement with SII, a Utah company, to buy SII's products.[36]  ASC failed to pay certain invoices, so SII brought suit against ASC in a Utah court.[37]  ASC argued that the Utah court lacked personal jurisdiction because ASC did not "transact" any business in Utah.[38]  The Utah Supreme Court disagreed with ASC, holding that ASC "transacted business" within Utah when its efforts were "purposefully directed" toward residents of Utah.[39]  The Court explained that ASC did not need to physically enter the state to subject itself to the jurisdiction of Utah, but could subject itself to the jurisdiction of the state by making a contract with someone in the state.[40]  The Court concluded that "the formation of a contract within a state involving a state resident qualifies as transaction of business for purposes of the long-arm statute."[41]

Like ASC's actions, Mr. Minton's actions were "purposefully directed" at and "affected" residents of Utah.  Mr. Minton physically entered the state to negotiate the terms of the contract, made phone calls, sent emails, and sent payments to Utah in accordance with the contract.  Such

---

[33] *Hafen v. Strebeck*, 338 F. Supp 2d 1257, 1260 (D. Utah 2004) (quoting *Nova Mud Corp. v. Fletcher*, 648 F. Supp. 1123, 1126 (D. Utah 1986)).

[34] *Hafen*, 338 F. Supp. 2d at 1260 (quoting UTAH CODE ANN. § 78-27-22).

[35] *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430 (Utah 1998).

[36] *Id.* at 432.

[37] *Id.*

[38] *Id.* at 433.

[39] *Id.* at 435.

[40] *Id.*

[41] *Id.* at 434.

activities were not "random, fortuitous, or attenuated."[42]  Considering the broad definition of

"transaction of business" in Utah, and taking Mrs. Dougan's allegations as true, Mr. Minton

"transacted business" in Utah and is subject to Utah's jurisdiction.

Mr. Minton also appears to argue that financial injury alone is insufficient to establish

personal jurisdiction.[43]  However, this argument has been rejected by the Utah Supreme Court,

which stated that "the suggestion that financial injuries cannot provide the basis for jurisdiction

at all is an oversimplification of the law."[44]  The Court noted that "[n]othing in the plain

language of the statute distinguishes between financial injuries and other injuries."[45]  Therefore,

financial injury may provide a basis for the exercise of specific personal jurisdiction where the

defendant's activities occurred in the state or were directed toward residents of the state.[46]

### 2.   Mr. Minton's Contacts with Utah Are Sufficient to Satisfy the Due Process Clause of the Fourteenth Amendment

"It is well established that jurisdiction must result from minimum contacts with the forum

state such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice."[47]  While "letters are not necessarily sufficient in themselves to establish

minimum contacts,"[48] "[i]n proper circumstances, even a single letter or telephone call to the

---

[42] *See Bell Helicopter*, 385 F.3d at 1296 (quoting *Burger King*, 471 U.S. at 475).

[43] Memorandum in Support at 6.

[44] *Pohl* 102 P.3d at 951.

[45] *Id*. at 950.

[46] *See Pohl*, 201 P.3d at 950–52.

[47] *SII MegaDiamond*, 969 P.2d at 435 (internal quotations omitted).

[48] *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995).

forum state may meet due process standards."[49] "[T]he exercise of jurisdiction depends on the *nature* of those contacts."[50]

In *Hafen v. Strebeck*, Sid Strebeck, a New Mexico resident, owed John Hafen, a Utah resident, approximately $188,000.00.[51] Strebeck and Hafen communicated by phone regarding the debt, and Strebeck assured Hafen that the obligations would be satisfied.[52] Strebeck subsequently sent Hafen a letter that confirmed these assurances.[53] Strebeck eventually failed to fulfill his obligations to Hafen, so Hafen brought suit in a Utah court.[54] Strebeck moved to dismiss Hafen's complaint for lack of personal jurisdiction, arguing that his few telephone calls and one letter to Hafen in Utah were "insufficient to establish the minimum contacts required under the Due Process Clause."[55] The court disagreed with Strebeck and concluded that jurisdiction over Strebeck in Utah "comports with traditional notions of fair play and substantial justice" because the claims at issue arose directly from Strebeck's communications with Hafen in Utah and there would be no cause of action "[b]ut for the fact of Strebeck's representations" to Hafen.[56] The court also rejected Strebeck's argument that it would be unfair "to require him to defend himself in a forum in which he has only a slight connection."[57]

Like Strebeck, Mr. Minton communicated with Utah residents by phone and by mail. Mr. Minton also traveled to Utah and sent emails to Utah. He also sent payments to Utah on a

---

[49] *Rambo*, 839 F.2d at 1418 (quoting *Burger King*, 471 U.S. at 475 n.18).

[50] *Rambo*, 839 F.2d at 1418.

[51] 338 F.Supp at 1258.

[52] *Id.* at 1259.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 1261.

[56] *Id.* at 1263.

[57] *Id.*

fairly regular basis.  Thus, jurisdiction over Mr. Minton in Utah "comports with traditional notions of fair play and substantial justice" because the claims at issue arose directly from Mr. Minton's communications with Mr. and Mrs. Dougan in Utah and there would be no cause of action "[b]ut for the fact of [Mr. Minton]'s representations."[58]  As a result, the second part of the specific jurisdiction test is satisfied because Mr. Minton's contacts with Utah are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

Because both parts of the specific jurisdiction test are met, jurisdiction is proper in Utah. Mrs. Dougan has carried her burden of establishing personal jurisdiction over Mr. Minton by establishing a prima facie case of personal jurisdiction.

### ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss[59] is DENIED.

Signed this 13th day of April, 2012

BY THE COURT

_____
District Judge David Nuffer

---

[58] *Id.*

[59] Motion to Dismiss, docket no. 3, filed January 5, 2012.